TISDALE v. AKERS.

4-8899                                          221 S. W. 2d 19

Opinion delivered June 6, 1949.

*Sullins & Perkins, Lee Seamster* and *Mark E. Woolsey,* for appellant.

*John W. Cloer* and *Greenhaw & Greenhaw,* for appellee.

ED. F. McFADDIN, Justice. In this suit on a promissory note, the primary question is whether the Chancery Court correctly evaluated the evidence on the issue of *payment;* and the secondary question is the *rate of interest.*

On May 23, 1947, Miss Jean Mullen, for value received, executed to James Akers (plaintiff below and appellee here) her promissory note for $2,000, payable $350 on May 27th, and $200 on the 27th day of every month thereafter until paid in full; and as a part of the transaction, and to secure the payment of the note, Jean Mullen executed to James Akers a chattel mortgage on all the fixtures and other equipment of the Monarch Cafe, then owned and operated by her in Springdale, Arkansas. She made the payments due in May and June, and then sold the cafe to Mrs. Edith Tisdale (defendant below and appellant here), who assumed the balance due on the Akers note, and made one payment of $200.

On January 30, 1948, Akers filed this suit, seeking judgment for the alleged balance of $1,250 due on the note, and for foreclosure of the chattel mortgage. Mrs. Tisdale resisted the suit, and claimed that she had paid the note in full. After extended hearings, the Chancery Court rendered judgment for Akers for the $1,250, together with interest at 8% thereon, and for foreclosure of the chattel mortgage. To reverse that decree, Mrs. Tisdale brings this appeal in which she argues (1) the issue of payment and (2) the rate of interest. We consider these points.

I. *Payment.* The burden of proving payment is on the person alleging it.[1] To meet that burden, Mrs. Tisdale—among other things—not only (a) exhibited the Mullen note in her possession (which makes a *prima*

[1] Smith v. Taylor, 144 Ark. 569, 222 S. W. 1062; Blass v. Lawhorn, 64 Ark. 466, 42 S. W. 1068; and see cases collected in West's Arkansas Digest, "Bills and Notes", § 499, and "Payment", § 65(6).

*facie* case for payment),[2] but also (b) testified that she personally paid Akers by delivering to him one $1,000 bill, two $100 bills and one $50 bill, which currency she testified she had in her safe deposit box in a bank in Fayetteville.

To rebut the presumption of payment, and to prove that the note had not been paid, Akers and his agent, Mitchell, testified: that Mrs. Tisdale wanted to make a new note to Akers for $1,250 payable at $100 per month, instead of $200 per month; that Akers (whose place of business was in Harrison) prepared the new note and sent it along with the old note to Mitchell in Springdale, with instructions to deliver the old note to Mrs. Tisdale when she signed the new note; that Mrs. Tisdale insisted on seeing the old note; that Mitchell, in violation of Akers' instructions, left the old note with Mrs. Tisdale without getting the new note; that Mrs. Tisdale thereafter refused to return either note; and that she never paid the balance of $1,250 due on the old note.

Each side offered supporting witnesses. The testimony is in irreconcilable conflict; and it would serve no useful purpose to summarize the testimony of each witness. After reviewing the entire record, we cannot reach the conclusion that the finding of the Chancellor is against the preponderance of the evidence. All of the witnesses testified in open court, with the exception of Jean Mullen, who testified by deposition. What we said in Murphy v. Osborn, 211 Ark. 319, 200 S. W. 2d 517 is especially applicable to this case:

"The chancellor observed the demeanor on the witness stand, the inflection in the voice and the hesitancy or rapidity of the words flowing from the mouth of the witness. The chancellor thus had an opportunity to see more than the mere words on the printed page which, alone, come to this court. With the testimony in this case in hopeless conflict, we cannot say that the Chancery Court decided against the preponderance of the evidence."

[2] Rose v. Rose, 184 Ark. 430, 42 S. W. 2d 567; Continental Gin Co. v. Benton, 104 Ark. 367, 149 S. W. 528; Hollenberg v. Lane, 47 Ark. 394, 1 S. W. 687.

We affirm that portion of the decree relating to the issue of payment.

II. *The Rate of Interest.* The note executed by Jean Mullen to Akers said, regarding interest: "With interest at ........................ percent. per annum from date until paid"; and the mortgage also failed to state the interest rate. Notwithstanding the fact that the rate of interest was left blank in the note, Akers testified that the contract rate of interest was 8%; and the court allowed recovery at that rate.

We hold that the legal rate of interest is all that can be recovered in this case. The cases as to the authority to fill in the blanks in a negotiable instrument[3] are not applicable here, because the blank was never completed in the case at bar. This is a case in which oral testimony was relied on to prove a contract rate of interest to have been more than 6%; and we have many times held that an agreement to pay interest at a rate exceeding 6% will not be enforced unless such agreement be in writing.[4] It follows therefore that the interest must be computed at 6% from the date of the note.

Conclusion: The decree of the chancery court is affirmed in all things, except as to the rate of interest. The cause is remanded for further proceedings, and all costs of this appeal are taxed against the appellant.

---

[3] For the provisions of the Negotiable Instruments Law, see § 68-114 Ark. Stats. of 1947 and § 10172 Pope's Digest. See, also, Brannan's Negotiable Instruments Law, 4th Ed., § 14.

[4] See Johnson v. Hull, 57 Ark. 550, 22 S. W. 176; Temple v. Hamilton, 178 Ark. 355, 11 S. W. 2d 465; Hamner v. Starling, 185 Ark. 948, 50 S. W. 2d 615.